JOAQUÍN PÉREZ VALDIVIESO Y TORRUELLA, Plaintiff and Appellee, v. JOSEFA LEÓN Y LEÓN, Defendant and Appellant.

No. 7546. Argued November 2, 1937.—Decided January 19, 1938.

*José A. Poventud* and *Alberto S. Poventud* for appellant.   *Fernando. B. Fornaris* and *Raúl Matos* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

On the 23rd of January, 1936, there was filed in this case an amended complaint in the District Court of Ponce, the pertinent part of which, copied *verbatim*, reads as follows:

"1. That the plaintiff Joaquín Pérez Valdivieso y Torruella and the defendant Josefa León y León are married to each other, residents of Ponce, Puerto Rico, and have always lived in the Island of Puerto Rico.

"2. That the plaintiff and the defendant contracted marriage in Ponce, Puerto Rico, on June 1, 1898, which marriage has not been annulled or dissolved in any manner since that date.

"3. That no children were born during the marriage.

"4. That from the month of March, 1926, both spouses have lived in a state of complete separation in their matrimonial life without interruption of any kind."

A demurrer for lack of a cause of action stated having been overruled the defendant filed her answer on January 23, as follows:

"1. The defendant admits allegations 1, 2 and 3 of the amended complaint.

"2. The defendant likewise admits the facts alleged in the fourth paragraph of the amended complaint; but avers that the matrimo-

nial separation mentioned between the plaintiff and the defendant occurred because the plaintiff abandoned the matrimonial home or abode for the reason that he had failed to pay the rent.

"As a separate defense and in opposition to the amended complaint it is alleged:

"(A) That the aforementioned amended complaint does not state facts sufficient to constitute a cause of action:

"I. Because according to the amended complaint itself, the alleged matrimonial separation for seven years began in March, 1926, wherefore said period of time elapsed prior to Act No. 46, approved by the Legislature of Puerto Rico on May 9, 1933, upon which the present action is based.

"II. Because Act No. 46 approved on May 9, 1933, on which the pretended action is based can not be given retroactive effect inasmuch as such amendatory statute contains no provision for retroactivity.

"III. Because when it was expressly provided in Act No. 46 of May 9, 1933, that it should go into force ninety days after its approval, the Legislature manifested its prospective effect.

"IV. Because if Act No. 46 of May 9, 1933, should be given a retroactive effect in this case, not only would its own terms be violated, but said statute would be rendered unconstitutional and void as violating Section 34, paragraph 6, of the Organic Act of Puerto Rico of March 2, 1917.

"V. And because if the aforementioned Act No. 46 of May 9, 1933, should be applied to the present case, in which according to the complaint the alleged separation took place before that act went into force, the statute would become unconstitutional and void inasmuch as it would be *ex post facto* legislation, in contravention of Section 2, paragraph 8, of the present Organic Act, approved by the Congress of the United States for Puerto Rico on March 2, 1917, and in violation of Section 9, paragraph 3 (Article 1) of the Constitution of the United States."

When the case came to be heard on July 20, 1936, the plaintiff introduced in evidence the certificate of marriage which had taken place between him and the defendant on June 1, 1898, and the following testimony:

"Don Joaquín Pérez Valdivieso y Torruella, under oath, testified: that he is the plaintiff in this case and is married to doña Josefa León y León, the defendant; that both he and the defendant

have always resided in the City of Ponce; that they contracted mar-' riage on June 1, 1898, and have never had children thereby; that they do not live together and have been separated uninterruptedly from March, 1926 and are still separated; that in 1926, and in the month heretofore mentioned, the plaintiff went to live at the house of his sister doña Ascención Pérez Valdivieso y Torruella, located at the Plaza Muñoz Rivera of Ponce, Puerto Rico; that from the month of March, 1926, he has not spoken to the defendant nor had relations of any sort with her; and that his marriage to the defendant has not been annulled or dissolved up to the present time.

"Doña Ascención Pérez Valdivieso y Torruella, under oath, said: that her name is as above stated; that she is of age and the plaintiff's sister; that she knows the plaintiff and the defendant who are married to each other; that they have had no children during their marriage; that said spouses do not live together inasmuch as they were separated in March, 1926, without interruption thereafter; when she was questioned by the plaintiff's attorney as to whether she knew if the plaintiff and the defendant spoke to each other, she answered: 'they do not'; that they have had no relations of any kind from the day that they separated up to the present time; that the plaintiff lives at the home of the witness, facing the Plaza de las Delicias or Muñoz Rivera of Ponce, entirely apart from the defendant who lives in her own home also in Ponce; that they are two entirely distinct and separate homes; that from March, 1926, the plaintiff does not live with his wife; that the plaintiff as well as the defendant have always lived in the city of Ponce, Puerto Rico; and that the marriage of the plaintiff and the defendant has not been annulled or dissolved in any way up to the present date.

"Don Juan Torruella Fornaris, under oath, substantially testified in accordance with what had been stated by the aforementioned witness doña Ascención Pérez Valdivieso y Torruella and in addition stated that he had supplied the plaintiff with a suit case for the purpose of moving from his matrimonial domicile to that of his sister, the aforementioned witness; and that the witness helped the plaintiff to prepare his removal."

The defendant presented no evidence and the court on the following October 10 decreed the divorce, declaring the defendat the innocent spouse with all the rights appurtenant to such a condition, according to the law invoked by the plaintiff and which the court considered applicable.

The present appeal was taken against said judgment. Five errors are assigned by the appellant which she discusses in an 80-page brief which is refuted by the opposite party in a brief of 131, both of which are interesting not only because of the authorities cited therein but because of the original arguments presented.

The facts, as we have seen, are clear and simple: This is a case of a marriage contracted almost forty years ago, the dissolution of which is requested by the husband on the ground that the spouses have been separated even since March, 1926, that is, for more than seven years before the filing of the complaint, in accordance with what is provided in Section 164 of the Civil Code (Section 96 of the 1930 edition), as amended by Act No. 46 of May 9, 1933, to wit:

"Section 1.—Section 164 of the Civil Code of Puerto Rico is hereby amended as follows:

" 'Section 164.—The causes for divorce are as follows:

" '1. Adultery on the part of either of the parties to the marriage.

" '2. Conviction of one of the parties to the marriage of a felony, which may involve the loss of civil rights.

" '3. Habitual drunkenness or the continued and excessive use of opium, morphine, or any other narcotic.

" '4. Cruel treatment or grave injury.

" '5. The abandonment of the wife by the husband, or of the husband by the wife, for a longer period of time than one year.

" '6. The absolute, perpetual and incurable impotency occurred after marriage.

" '7. The attempt of the husband or wife to corrupt their sons or to prostitute their daughters, and connivance in their corruption or prostitution.

" '8. The proposal of the husband to prostitute his wife.

" '9. The separation of both spouses for an uninterrupted period of time of more than seven (7) years *provided,* That when the separation for the said period more than (7) years is satisfactorily proved, the woman, when the judgment is rendered, shall always be considered as the innocent spouse, with all the rights inherent in such condition following divorce.'

"Section 2.—All laws or parts of laws in conflict herewith are hereby repealed.

"Section 3.—This Act shall take effect ninety days after its approval."

The question to consider and decide is whether or not the statute invoked is the one which governs this case. If it is, the divorce decree should be sustained, and if it is not, the judgment appealed from should be reversed and the complaint dismissed.

The appellant alleges that the act in question can not govern this case because it is not retroactive but rather prospective, that is, said party maintains that the new ground for divorce—separation of the spouses for a period of more than seven years without interruption—can not be applied until after the 1933 amendment and therefore does not cover the facts of this case. According to the theory of the appellant the amendment of 1933 would have no practical application until 1940, notwithstanding the fact that the legislator prescribed that the statute should go into effect ninety days after its approval.

After a careful study of all the questions raised and attempting to limit our opinion to the point which we consider essential, we believe that the plaintiff had a right to invoke the amendment of 1933 and that the court correctly applied the latter. The new ground for divorce involved in this case was set up by the legislator to go into full effect from the date that it was to go into force, that is, ninety days after the day of its approval which was on May 9, 1933. Laws of 1932–1933, p. 306.

This may be gathered from its own terms. "The grounds for divorce are..." said the legislator, and he thereafter enumerated all of them, without distinguishing between them, wherefore the interpretation that the new ground was to have immediate effect is supported by the temporary provisions of the same code as amended, the first of which says:

"The changes introduced by the reforms made in the Civil Code, which prejudice rights vested according to the previous civil legislation shall not have retroactive effect. To apply the corresponding legislation in cases not expressly defined in the revised Code the following rules shall be observed:

"1. The rights originating under the legislation previous to the revised Code from acts which took place while it was in force, shall be governed by the previous legislation even though the said Code regulates them in a different manner or does not recognize them. But if the rights shall appear and be declared for the first time in the revised Civil Code it shall have a prospective effect, even though the act which produces it shall take place under the previous legislation. Provided that it be not in conflict with or prejudicial to another right borne or acquired through the operation of the said previous legislation." Civil Code of Puerto Rico (1930 ed.) p. 390.

A similar situation arose when the Revised Civil Code went into force in 1902. The Puerto Rican legislator created new grounds for divorce and its provisions were immediately applied even though the facts giving right to them should have taken place under prior legislation.

The fact is that the institution of marriage, its celebration, relations and dissolution, are matters of public interest which the people, by means of its government, have always reserved the power of regulating with absolute freedom.

As the Supreme Court of the United States said through its Chief Justice Marshall in the case of *Trustees of Dartmouth College* v. *Woodward,* 17 U. S. 517, 587, 598, 628:

"The plaintiffs contend, in the second place, that the acts in question are repugnant to the 10th section of the last article of the constitution of the United States. The material words of tha section are, 'no state shall pass any bill of attainder, *ex post facto law,* or law impairing the obligation of contracts.' . . .

"*Holmes,* for the defendant in error, argued, that the prohibition in the constitution of the United States, which alone gives the court jurisdiction in this case, did not extend to grants of political power; to contracts concerning the internal government and police of a sovereign state. Nor does it extend to contracts which relate merely to

matters of civil institution, even of a private nature. Thus, marriage is a contract and a private contract; but relating merely to a matter of civil institution, which every society has an inherent right to regulate as its own wisdom any dictate, it cannot be considered as within the spirit of this prohibitory clause. Divorces unquestionably impair the obligation to the nuptial contract; they change the relations of the marriage state, without the consent of both the paries, and thus come clearly within the letter of the prohibition. But surely, no one will contend, that there is locked up in his mystica clause of the constitution a prohibition to the states to grant divorces, a power peculiarly appropriate to domestic legislation, and which has been exercised in every age and nation where civilization has produced that corruption of manner, which, unfortunately, requires this remedy. . . .

" . . . The provision of the constitution never has been understood to embrace other contracts, than those which respect property, or some object of value, and confer rights which may be asserted in a court of justice. It never has been understood to restrict the general right of the legislature to legislate on the subject of divorces. Those acts enable some tribunals, not to impair a marriage contract, but to liberate one of the parties, because it has been broken by the other.''

And as Bishop in his treatise upon "Marriage and Divorce'', vol. 1, sec. 1480, states:

"Divorce statutes concern the good order of society. If, contemplating the interest involved as public, it is for the public order and profit that marriage be dissolved after the transpiring of a particular delictum, it can make no difference what was the date of the delinquency, or whether before or after the statute was enacted. Hence, when the legislative intent does not directly appear in the statutory words, they should be applied equally to past and future transactions.''

Finally it seems convenient to cite at least one of the several decisions of the Supreme Court of Louisina in cases which are closely related to the present one. We shall select that of *Hava* v. *Chavigny,* 143 La. 366, which in so far as pertinent reads as follows:

"It is argued, in support of the exception, that the act refers only to the future, and that it is not retrospective in its effect in any degree, and that it does not cover married persons who have been living separate and apart for a period of seven years or more before the date of the passage of the act. This same point was presented and ruled upon adversely in the case of *Hurry* v. *Hurry,* 141 La. 954, 76 South. 160.

"The act provides that a suit may be instituted, of course, after the passage of the act, for divorce on the ground stated in the act. It does not attempt to provide for a suit instituted before its passage; and this suit was instituted after the passage of the act. The act is not retrospective in that respect.

"It was held in the Hurry Case that the language of the act is clear and unambiguous, and it must be given effect to. The act (section 1) provides:

" 'That when married persons have been living separate and apart for a period of seven years or more, either party to the marriage contract may sue . . . for an absolute divorce,' etc.

"Plaintiff, having alleged in his petition that he and his wife 'had been living separate and apart for a period of seven years or more' prior to the date of the filing of the suit, under that act, shows a cause of action for a divorce.

"Act No. 269 contains an additional ground for divorce to those mentioned in the articles of the Civil Code, and the amendments thereof; and it does not provide that the seven years or more during which the married persons have been living separate and apart should be subsequent to the adoption of the act. On the contrary, it provides that 'when married persons have been living separate and apart for a period of seven years or more,' either party may sue for a divorce.

"In his reasons for sustaining the exception of no cause of action, the judge says that there is no allegation in the petition that plaintiff was without fault, and that he has performed, or been ready to perform, his duties under the marriage contract. But this allegation is not mentioned in Act No. 269. The act imposes no other conditions with respect to its enforcement that that the parties shall 'have been living separate and apart for a period of seven years or more.' The allegation that he was without fault was therefore unnecessary to support the cause of action in this case. *Raymond* v. *Carrano,* 112 La. 869, 36 South. 787.

"In a supplemental brief, defendant shifts her ground, and says:

" 'We filed an exception of no cause of action, which was leveled tacitly at the constitutionality of the act.'

"Defendant quotes article 166 of the Constitution to the effect:

" 'No *ex post facto* law, or any law impairing the obligations of contracts, shall be passed, or vested rights be divested,' etc.

"Act No. 269 is not a criminal statute; it is not an *ex post facto* law; and it does not impair the obligation of any contract. It provides for a dissolution of the contract of marriage after such contract has been entered into for a cause arising subsequent to the date of the marriage. But that does not impair the obligations of the parties to the contract. The dissolution of the marriage will operate a dissolution of the community of acquets and gains existing between the spouses, and each one will take his share therein; but there will be no divestiture of defendant's rights by the dissolution of the community. She will take her share therein. The act is constitutional."

The statute of Puerto Rico also is constitutional as approved and as invoked and applied in this case. The errors assigned by the appellant were in our opinion not committed. Our Organic Act has not been violated.

In 1933 our Legislature wisely judged that those marriages where the spouses should have been separated for over seven consecutive years should be able to be dissolved by courts of justice by a divorce decree, without the necessity of investigating which of the spouses should have been the guilty one, with the condition that the wife should always be considered the innocent party with all the rights appurtenant to that condition as a result of the divorce. Since the allegations and the evidence show that this is such a case, the appeal should be dismissed and the judgment of the district court dissolving the marriage between the parties should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.